UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

FORMAN HOLT & ELIADES LLC
218 Route 17 North
Rochelle Park, New Jersey 07662
(201) 845-1000
Attorneys for Debtor
Daniel M. Eliades (DME-6203)

In re:                                          Chapter 11

CHAMPIONSWORLD, LLC,                            Case No. 05-11194 (MS)

                        Debtor.


**THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION DEBTOR**

# TABLE OF CONTENTS

ARTICLE I:    DEFINED TERMS AND INTERPRETATION…………………………  1

    1.1    Interpretations…………………………………………………………..  1
    1.2    Application of Definitions and Rules of Construction
           Contained in the Bankruptcy Code.…………………………………….  1
    1.3    Definitions.............................................................................................  1

ARTICLE II:    CLASSIFICATION OF CLAIMS AND DEBTOR INTERESTS……….  8

    2.1    Claims Classified…………………………………………………………  8
    2.2    Administrative Claims……………………………………………………  8
    2.3    Claims and Debtor Interests…………………………………………….  9

ARTICLE III: IDENTIFICATION OF IMPAIRED CLASSES OF
             CLAIMS AND DEBTOR INTERESTS…………………………………  9

    3.1    Unimpaired Classes of Claims……………………………………………  9
    3.2    Impaired Classes of Claims and Debtor Interests………………………..  9
    3.3    Impairment Controversies………………………………………………..  10

ARTICLE IV: TREATMENT OF CLASSES OF CLAIMS
            AND DEBTOR INTERESTS…………………………………………  10

    4.1    Claims and Debtor Interests……………………………………………  10

ARTICLE V:  PROVISIONS FOR TREATMENT OF UNCLASSIFED CLAIMS…….  16

    5.1    Administrative Claims……………………………………………………  16

ARTICLE VI: MEANS FOR EXECUTIONS OF THE PLAN…………………………..  18

    6.1    Means for Implementation of the Plan…………………………………  18
    6.2    Post-confirmation Structure……………………………………………  18
    6.3    Post-confirmation Management………………………………………  20

ARTICLE VII: ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
            REJECTION BY ONE OR MORE CLASSES OF CLAIMS
            OR DEBTOR INTERESTS…………………………………………...  24

    7.1    Classes Entitled to Vote…………………………………………………  24
    7.2    Class Acceptance Requirement…………………………………………..  24

i

7.3     Confirmation Without Acceptance…………………………………………   25

ARTICLE VIII: PROVISIONS GOVERNING DISTRIBUTIONS…………………..   25

8.1     Date of Distributions…………………………………………………   25
8.2     Disbursing Agent……………………………………………………   25
8.3     Means of Cash Payment………………………………………………   25
8.4     Delivery of Distributions……………………………………………...   25
8.5     Time Bar to Cash Payments…………………………………………...   25

ARTICLE IX: TREATMENT OF EXECUTORY CONTRACTS
          AND UNEXPIRED LEASES………………………………………………   26

9.1     Executory Contracts and Unexpired Leases……………………………..   26
9.2     Cure of Defaults………………………………………………………   26
9.3     Claims Based on Rejection of Executory Contracts
          or Unexpired Leases…………………………………………………..   26

ARTICLE X:  OBJECTIONS TO CLAIMS…………………………………………   27

10.1    Objection Deadline……………………………………………………   27
10.2    Treatment of Disputed Claims………………………………………...   27

ARTICLE XI: MISCELLANEOUS PROVISIONS………………………………….   28

11.1    Effect of Confirmation Order…………………………………………   28
11.2    Abandonment, Vesting and Re-vesting of Assets………………………   28
11.3    Disbanding of Creditors' Committee…………………………………   28
11.4    Binding Effect………………………………………………………   28
11.5    Severability……………………………………………………………   29

ARTICLE XII: CONSUMMATION OF THE PLAN…………………………………..   29

12.1    Retention of Jurisdiction………………………………………………   29
12.2    Failure of Court to Exercise Jurisdiction…………………………….....   30
12.3    Modification of Plan…………………………………………………   30
12.4    Inconsistencies Between Plan and Disclosure Statement…..…………….   30

## ARTICLE I

## DEFINED TERMS AND INTERPRETATION

**1.1.** **Interpretation.** Unless otherwise specified, all paragraph, section, article and exhibit references in the Plan are to the respective paragraph in, section in, article of, or exhibit to the Plan, as the same may be amended or modified. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**1.2** **Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.** Words and terms defined in the Bankruptcy Code shall have the same meaning when used in the Plan, unless a specific different definition is given in the Plan. The rules of construction in Bankruptcy Code section 102 apply to construction of the Plan.

**1.3** **Definitions.** The capitalized terms used herein have the respective meanings set forth below.

(a) "Administrative Claim" means a Claim for a cost or expense of administration in the Chapter 11 Case asserted pursuant to Bankruptcy Code Section 503(b).

(b) "Allowed" when used with respect to a Claim or Debtor Interest, except for a Claim or Debtor Interest that is an Administrative Claim, means a Claim or Debtor Interest (i) that is allowed as set forth in Article V of this Plan, or (ii) that is not a Contested Claim.

(c) "Assets" means, with respect to the Debtor, any and all property in which the Debtor has an interest within the meaning of Bankruptcy Code section 541.

(d) "Bankruptcy Code" means title 11 of the United States Code, together with all amendments and modifications to the extent applicable to this Chapter 11 Case.

1

(e)      "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey, having subject matter jurisdiction over this Chapter 11 Case.

(f)      "Bankruptcy Estate" means the estate of the Debtor created pursuant to Bankruptcy Code section 541 and this Plan.

(g)      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, together with all amendments and modifications to the extent applicable to this Chapter 11 Case.

(h)      "Bar Date" means May 10, 2005  the date fixed by the Bankruptcy Court by which any and all Proofs of Claim, except for those of governmental units, are required to be filed against the Debtor.

(i)      "Business Day" means any day except Saturday, Sunday, or any legal holiday expressly set forth in Bankruptcy Rule 9006(a).

(j)      "Cash" means legal tender of the United States of America or cash equivalents.

(k)      "Cause of Action" means (i) a right of the Debtor or the Bankruptcy Estate to payment from any Person, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and (ii) a right of the Debtor or the Bankruptcy Estate to an equitable remedy against any Person for breach of performance whether or not such remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, which may exist as of the Effective Date, regardless of whether these rights arose before, on or after the Petition Date, including any preference, fraudulent transfer, and other actions which may be asserted pursuant to Bankruptcy Code sections

2

105, 510, 542, 543, 544, 545, 547, 548, 549 or 550, and any avoidance actions available to the Debtor or the Bankruptcy Estate under state law, excluding the USSF/MLS Claims.

(l)     "Chapter 11 Case" means the Debtor's bankruptcy case, currently under Chapter 11 of the Bankruptcy Code.

(m)     "Claim" means any right to payment from the Debtor's or the Bankruptcy Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor or the Bankruptcy Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured, or unsecured.

(n)     "Claimant" means the holder of a Claim.

(o)     "Class" means a category of holders of Claims or Debtor Interests as provided for in Article II of the Plan.

(p)     "Collateral" means any Asset subject to an unavoidable Lien or right of set-off securing payment of a Claim.

(q)     "Confirmation Date" means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

(r)     "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court, and any adjournment or continuation thereof, at which the Plan Proponent requests confirmation of the Plan.

(s)     "Confirmation Order" means the order of the Bankruptcy Court or any other court of competent jurisdiction which is entered confirming the Plan.

3

(t)     "Contested Claim," means a Claim against the Debtor, other than an allowed Administrative Claim, (i) that is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated, or (ii) that is the subject of a Proof of Claim to which an objection has been filed.

(u)     "Creditor" means an entity that has Claim against the Debtor which arose at the time of or before the Petition Date; or an entity that has a Claim against the Debtor's estate of a kind specified in Bankruptcy Code sections 348(d), 502(f), (g), (h) or (i).

(v)     "Debtor" means ChampionsWorld, LLC.

(w)     "Debtor Interests" means all right, title and interest of the Debtor in any Assets including but not limited to the right to receive and partnership distributions, stock dividends or payments of any kind such as the right to collect on any loan, and the right/ability to vote, hold or control any shares/Interests of the Debtor in non-debtor corporations, entities, proprietorships or partnerships.

(x)     "Deficiency Claim" means the Claim of any holder of a Secured Claim, which is not being cured and reinstated and which by contract between the Debtor and the Claimant enables the Claimant to seek payment from the Debtor for the difference, if any, between the Allowed Claim and the value of the Collateral securing the Allowed Claim.

(y)     "Disbursing Agent" means the Plan Administrator.

(z)     "Disclosure Statement" means the third amended disclosure statement prepared by the Debtor pursuant to 11 U.S.C. §1125(a), which was approved by the Court on December ___, 2005.

4

(aa)    "Distribution Date" means the date on which a distribution on a claim is to be made pursuant to the Plan, which shall occur ten days after all orders governing Fee Claims have become Final Orders.

(bb)    "Effective Date" of the Plan shall occur ten (10) days after the Confirmation Order pursuant to 11 U.S.C. § 1129 becomes a Final Order.

(cc)    "Equity Interest" means (i) a share in any corporation whether or not transferable or denominated "stock", or similar security; or (ii) a warrant or right (other than a right to convert) to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (i) of this paragraph.

(dd)    "Federal Tax Liability" means any liability of the Debtor including penalties and interest, to the United States of America pursuant to the Tax Code, for income or gain, whether actual or imputed.

(ee)    "Fee Application" means an application under Bankruptcy Code Section 330 or 503 for an allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(ff)    "Fee Claim" means a Claim under Bankruptcy Code section 330 and 503 for an allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(gg)    "Final Order" means a final order or judgment of the Bankruptcy Court or any other court or adjudicative body, which has not been stayed pending appeal, timely motion for reconsideration or certiorari proceeding and, with respect to any Fee Claim, includes a final award of compensation awarding or adjusting any prior interim award which becomes a Final Order.

(hh)  "General Unsecured Claim" means any Claim that is not an Administrative Claim, a Fee Claim, a Non-Tax Priority Claim, a Priority Tax Claim, an Insider Claim, a Secured Claim or an Interest in the Debtor and includes all Deficiency Claims.

(ii)  "Insider" means any person as defined at 11 U.S.C. § 101(31) of the Bankruptcy Code.

(jj)  "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

(kk)  "Litigation Funding Group" consists of the following members of the Debtor who have agreed to loan to the Debtor funds sufficient to satisfy the Debtor's obligations to Pryor Cashman in connection with the USSF/MLS Claims:  Scott Clark, Paul Kehoe, Jim Moonier and Prince Turki Khalid.

(ll)  "Litigation Loan" means the loan agreement between the Litigation Funding Group and the Debtor in connection with the funding of the litigation in connection with the USSF/MLS Claims.

(mm)  "Objection Deadline" means the date by which objections to Claims must be filed; to wit, sixty (60) days after the Effective Date, or such later date as may be established by Order of the Bankruptcy Court.

(nn)  "Person" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

(oo)  "Petition Date" means January 13, 2005.

(pp)  "Plan" means this third amended chapter 11 plan as it may be amended from time to time in compliance with the Bankruptcy Code and the Bankruptcy Rules.

6

(qq)    "Plan Proponent" means the Debtor.

(rr)    "Professional Person" means a Person retained or to be compensated pursuant to Bankruptcy Code section 327, 328, 330, 503(b)(2), (3), (4), (5) or 1103.

(ss)    "Proof of Claim" means a document (i) identical to or (ii) substantially similar to, and containing the information required by Official Form 10 of the Bankruptcy Rules.

(tt)    "Pro Rata" means, with respect to a distribution the ratio of the dollar amount of the Claim or Debtor Interest in the indicated Class to the aggregate dollar amount of all Claims or Debtor Interests in the indicated Class (including in each such calculation the full amount of Contested Claims or Debtor Interests in the Class as of that date, but excluding any Contested Claims or Debtor Interests which have been disallowed by a Final Order).

(uu)    "Secured Claim" means (i) a Claim secured by a Lien which is valid, perfected and enforceable under applicable law and is not avoidable under the Bankruptcy Code or other applicable non-bankruptcy law; (ii) a Claim allowed under the Plan as a Secured Claim, and (iii) the secured portion of a Claim whose Lien is preserved under Bankruptcy Code section 506(d)(1).  Secured Claims do not include any Claims secured by a Lien against the assets of any Partnership.

(vv)    "State Tax Liability" means any tax liability of the Debtor for income or gain, whether actual or imputed, including penalties and interest, which is not a Federal Tax Liability.

(ww)    "Tax Attribute" means those rights of the Debtor to exclude or offset income and avoid taxation set forth in Tax Code section 1398(g), including any net operating loss carry-forward, any charitable contribution carry-forward, any credit carry-forward, any

capital loss carry-forward, any passive activity loss carry-forward, and any basis, holding period or other character of any Asset to which the Debtor were entitled as of the Petition Date or which arises from or relates to any Asset after the Petition Date but prior to the entry of a Final Decree.

(xx)    "Tax Claim" means any Federal Tax Liability or State Tax Liability.

(yy)    "Tax Code" means the Internal Revenue Code of 1986, 26 U.S.C. § 1 et seq., as amended from time to time, and corresponding provisions of any subsequent federal revenue act.  A reference to a section of the Tax Code shall include a reference to any and all Treasury regulations interpreting, limiting or expanding such section of the Tax Code.

(zz)    "USSF/MLS Claims" means the Debtor's cause of action against the United States Soccer Federation and Major League Soccer.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND DEBTOR INTERESTS

The Plan classifies Claims and Debtor Interests into various Classes.  The Plan states whether each Class of Claims or Debtor Interests is impaired or unimpaired.  Certain types of claims are not placed into voting Classes.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

**2.1    Claims Classified.**  All claims and Debtor Interests, except for Administrative Claims, shall be classified as forth in Section 2.3 of the Plan

**2.2    Administrative Claims.**  As provided by Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor or the Bankruptcy Estate shall not be classified for

purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated

separately as unclassified Claims as set forth in Article V of the Plan.

    **2.3**    **Claims and Debtor Interests.**  The Claims and Debtor Interests are classified as

follows:

    <u>Class 1</u>:  Class 1 is comprised of the Allowed Priority Unsecured Claims.

    <u>Class 2</u>: Class 2 is comprised of the Allowed Claims of the Litigation Funding

Group.

    <u>Class 3</u>: Class 3 is comprised of Allowed General Unsecured Claims except as

provided under Classes 4 and 5.

    <u>Class 4</u>:  Class 4A is comprised of the Allowed General Unsecured Claim of the

United States Soccer Federation.

    Class 4B is comprised of the Allowed Secured Claim of the United States

Soccer Federation.

    <u>Class 5</u>:  Class 5 is comprised of the Subordinated General Unsecured Insider

Claims.

    <u>Class 6</u>:  Class 6 is comprised of Interests of Members and Equity Interests in the

Debtor.

## ARTICLE III

### IDENTIFICATION OF IMPAIRED
### CLASSES OF CLAIMS AND DEBTOR INTERESTS

    **3.1**    **Unimpaired Classes of Claims.**  There are no unimpaired classes under the Plan.

    **3.2**    **Impaired Classes of Claims and Debtor Interests.**  Claims of Classes 1, 2, 3, 4A,

4B, 5 and 6.

**3.3**    <u>**Impairment Controversies**</u>.  If a controversy exists as to whether any Claim, or any

class of Claims, is impaired, the Bankruptcy Court shall determine such controversy before or at the

Confirmation Hearing.

**ARTICLE IV**

<u>**TREATMENT OF CLASSES OF CLAIMS AND DEBTOR INTERESTS**</u>

**4.1**    <u>**Claims and Debtor Interests**</u>.  The Classes of Claims and Debtor Interests shall be

treated as follows:

<u>Class 1 – Priority Unsecured Claims</u>.

This Class consists of priority claims that are referred to in Bankruptcy Code §507(a)(3),

(4), (5), (6) and (7).  Each holder of an Allowed Class 1 Claim shall receive Cash on the Effective

Date equal to the allowed amount of such claim.  However, the Debtor does not believe that there

are any holders of Allowed Class 1 Priority Unsecured Claims.  Accordingly, the Debtor is not

scheduling any distributions for Allowed Class 1 Claims.

<u>Class 2 – Litigation Funding Group Claims</u>.

This Class consists of the claims belonging to the Litigation Funding Group.  Allowed Class

2 Litigation Funding Group Claims shall be paid the outstanding amount of the Litigation Loan to

the Debtor, together with all interest at the rate of five percent (5%) per annum on the

outstanding balance of the loan from the date(s) of the loan until paid in full.  Said Claims shall

be paid from the proceeds of any recovery by the Debtor from the USSF/MLS Claims.  **In the**

**event that no proceeds are realized by the Debtor on account of the USSF/MLS Claims,**

**there will be no distribution to Allowed Class 2 Claimants.**

Moreover, <u>after</u> payment in full of (a) the Debtor's obligations to Pryor Cashman under

the modified Engagement Agreement (as further modified by the terms set forth in Article

10

IV(C)(2) of the Disclosure Statement) and (b) the Debtor's obligations to re-pay the Litigation

Loan, together with all outstanding interest, to the Litigation Funding Group, -- any remaining

proceeds realized by the Debtor from the USSF/MLS Claims (the "Remaining Claim Proceeds")

shall be distributed and divided as follows:

      i.    <u>The first $1 Million of Remaining Claim Proceeds</u>.  Allowed Class 2

Litigation Funding Group Claims shall be paid the balance from the first $1 Million of

Remaining Claim Proceeds after payment to Allowed Administrative Claims, Priority

Tax Claims, Class 1 Priority Unsecured Claims and Allowed Class 3 General Unsecured

Claims as follows:

      a.    If all Allowed Administrative Claims, Priority Tax Claims and

Class 1 Priority Unsecured Claims have been paid in full, then Two Hundred

Thousand ($200,000) Dollars shall be distributed to holders of Allowed Class 3

General Unsecured Claims and Eight Hundred Thousand ($800,000) Dollars shall

be distributed Class 2 Litigation Funding Group Claims.

      b.    If Allowed Administrative Claims, Priority Tax Claims or Class 1

Priority Unsecured Claims remain unpaid and the amount of said unpaid claims

are less than or equal to One Hundred Thousand ($100,000) Dollars, then (i)

holders of Allowed Administrative Claims, Priority Tax Claims and Class One

Priority Unsecured Claims shall be paid in full; and (ii) the sum of Two Hundred

Thousand ($200,000) Dollars shall be distributed to holders of Allowed Class 3

General Unsecured Claims; and (iii) holders of Allowed Class 2 Litigation

Funding Group Claims shall receive the sum of Seven Hundred Thousand

($700,000), plus the difference between the Allowed Administrative Claims,

Priority Tax Claims or Class 1 Priority Unsecured Claims paid and One Hundred Thousand ($100,000) Dollars.    By way of example, if unpaid Allowed Administrative Claims, Priority Tax Claims or Class 1 Priority Unsecured Claims total Fifty Thousand ($50,000) Dollars, then the sum of Two Hundred Thousand ($200,000) Dollars shall be distributed to holders of Allowed Class 3 General Unsecured Claims and the sum of Seven Hundred Fifty Thousand ($750,000) Dollars shall be distributed to holders of Allowed Class 2 Litigation Funding Group Claims.

c.    If Allowed Administrative Claims, Priority Tax Claims or Class 1 Priority Unsecured Claims remain unpaid and the amount of said unpaid claims are greater than One Hundred Thousand ($100,000) Dollars but less than or equal to Two Hundred Thousand ($200,000) Dollars, then (i) holders of Allowed Administrative Claims, Priority Tax Claims and Class One Priority Unsecured Claims shall be paid in full from the first $1 Million of Remaining Claim Proceeds; (ii) holders of Allowed Class 3 General Unsecured Claims shall receive a distribution equal to the sum of Two Hundred Thousand ($200,000), less the amount paid to holders of Allowed Administrative Claims, Priority Tax Claims and Class One Priority Unsecured Claims, plus the additional sum of One Hundred Thousand ($100,000) Dollars; and (iii) holders of Allowed Class 2 Litigation Funding Group Claims shall receive the sum of Seven Hundred Thousand ($700,000) Dollars.    As an example, if unpaid Allowed Administrative Claims, Priority Tax Claims or Class 1 Priority Unsecured Claims equal $150,000, then the sum of $50,000, plus an additional $100,000 will be

12

distributed to holders of Allowed Class 3 General Unsecured Claims.  Thus, the maximum funds available for payment of Allowed Administrative Claims, Priority Tax Claims, Class 1 Priority Unsecured Claims and Allowed Class 3 General Unsecured Claims shall be Three Hundred Thousand ($300,000) Dollars.

d.      In the event Allowed Administrative Claims, Priority Tax Claims or Class 1 Priority Unsecured Claims are greater than $200,000, then Allowed Administrative Claims, Priority Tax Claims or Class 1 Priority Unsecured Claims shall be paid in full; (ii) and the sum of One Hundred Thousand ($100,000) shall be distributed to holders of Class 3 General Unsecured Claims; and (iii) holders of Allowed Class 2 Litigation Funding Group Claims shall receive the balance of the First $1 Million in Remaining Claim Proceeds, but in no event, shall the amount distributed to Class 2 Litigation Funding Group Claims be less than Seven Hundred Thousand ($700,000) Dollars..

ii.      <u>Remaining Claim Proceeds in Excess of $1 Million.</u>   The Remaining Claim Proceeds in excess of $1 Million shall be distributed and divided by (1) eighty percent (80%) going to holders of Allowed Class 2 Litigation Funding Group Claims; and (2) twenty percent (20%) going to holders of Allowed Claims against the Debtor as prioritized in the Plan.  To the extent that any portion of the twenty percent (20%) allocation to Creditors holding Allowed Claims against the Debtor exceeds the amount of the Allowed Claims against the Debtor, such excess funds shall be paid to holders of Allowed Class 5 Subordinated General Unsecured Insider Claims and then to the members of the Debtor existing as of the Petition Date, on a pro rata basis per membership interest.

<u>Class 3 – General Unsecured Claims.</u>

This Class is Impaired. This Class shall consist of all creditors holding Allowed General Unsecured Claims against the Debtor which are not classified as Class 1 Priority Unsecured Claims, Class 4A General Unsecured USSF Claim and Class 5 Subordinated General Unsecured Insider Claims.

To the extent available, Allowed Class 3 Claimants shall receive a Cash distribution from the liquidation of the Debtor's Assets <u>after</u> full payment of all Allowed Administrative Claims, Priority Tax Claims, Class 1 Claims, and post confirmation Liquidation Expense Claims. In the event that there are Allowed Class 4A Claimants, then Allowed Class 3 Claimants shall receive distribution <u>at the same time</u> and in the same percentage as Allowed Class 4A General Unsecured USSF Claims.

In addition, Allowed Class 3 Claims shall receive a portion of the Remaining Claim Proceeds as set forth in the preceding section describing the treatment of Class 2 Claims. Allowed Class 3 General Unsecured Claims shall be paid in full, to the extent available, from the Assets liquidated by the Plan Administrator as such Assets are liquidated but after superior creditors are paid in full as set forth and prioritized in the Plan.

<u>Class 4- United States Soccer Federation Claims.</u>

<u>Class 4A – General Unsecured USSF Claim</u>

This Class is Impaired. This Class shall consist of the Allowed General Unsecured Claim of the United States Soccer Federation.

To the extent available, Allowed Class 4 Claimants shall receive a Cash distribution from the liquidation of the Debtor's Assets <u>after</u> full payment of all Allowed Administrative Claims,

14

Priority Tax Claims, Class 1 Claims, and post confirmation Liquidation Expense Claims. Distribution to Allowed Class 4A Claimants shall be made <u>at the same time</u> and in the same percentage as Allowed Class 3 General Unsecured Claims.

<u>Class 4B Secured USSF Claim.</u>

This Class is Impaired.  This class shall consist of the Allowed Secured Claim of the United States Soccer Federation.

To the extent that the USSF is found to have an Allowed Secured Claim in the security deposit/bond currently held by the USSF, the USSF may take the necessary and appropriate steps to liquidate its interest in the bond.  To the extent that the USSF is found not to have an Allowed Secured Claim, then the USSF shall turnover said deposit/bond to the Debtor within ten (10) days for distribution in accordance with the terms of the Plan.

<u>Class 5 – Subordinated General Unsecured Insider Claims.</u>

This Class is impaired.   This Class shall consist of all Allowed General Unsecured Claims of members of the Debtor.

To the extent available, Allowed Class 5 Claimants shall receive a Cash distribution from the liquidation of the Debtor's assets, other than the USSF/MLS claims, <u>after</u> full payment of all Allowed Administrative Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims and post-confirmation Liquidation Expense Claims.

In addition, allowed Class 5 Claims shall receive a portion of the Remaining Claim Proceeds as set forth in the preceding section describing the treatment of Class 2 Claims.  Allowed Class 5 Claims shall be paid in full, to the extent available, from the Assets liquidated by the Plan Administrator as such Assets are liquidated but after superior creditors are paid in full as set forth and prioritized in the Plan.

Class 6 - Debtor Interests.

This Class consists of all Claims and Interests of Members and Equity Interests in the Debtor.  On account of and subject to making the Litigation Loan, members of the Debtor shall retain ownership of all interests in the Debtor.  However, no Cash distribution may be made to members on account of Allowed Class 6 Debtor Interests unless and until all Allowed Class 1, 2, 3, 4 and 5 Claims are paid in full.

### ARTICLE V

### PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS

**5.1    Administrative Claims.**  All Administrative Claims against the Debtor shall be treated as follows:

**(a)  Time for Filing Administrative Claims.**  On June 1, 2005, an order was entered by the Court fixing June 30, 2005 (the "Administrative Bar Date") as the last date for all entities who assert the entitlement to an Administrative Claim, other than a Fee Claim, quarterly fees due the Office of the United States Trustee or Lino DiCuollo, the Debtor's representative, to file an Administrative Claim.  Any entity which was required to file and serve a request for an Administrative Claim, but failed to timely file and serve an appropriate request for payment of an Administrative Claim on or before the Administrative Bar Date shall be forever barred, estopped, and enjoined from asserting any such claim or interest against the Debtor, its estate, its agent and representatives, the Debtor's property, or the proceeds thereof, and the Debtor, its estate, agents and representatives shall be forever discharged from any and all indebtedness or liability with respect to such claim or interest.

Notwithstanding the above, on December 9, 2005, Lino DiCuollo resigned as the Debtor's representative and Timothy Kassel assumed the responsibilities of Debtor's representative.  Mr.

Kassel will be paid for services rendered as the Debtor's representative at the rate of $75 per hour from December 9, 2005 until the Effective Date.

(b)      **Time for Filing Fee Claims.**   Each Professional Person who holds or asserts an Administrative Claim that is a Fee Claim shall file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within sixty (60) days after the Effective Date. The failure to file the Fee Application as required under this Section 5.1(b) of the Plan shall result in the Fee Claim being forever barred and discharged.   The Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding procedures for the payment of Fee Claims.

(c)      **Allowance of Administrative Claims.**   An Administrative Claim with respect to which has been properly filed pursuant to Section 5.1(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed on or before sixty (60) days after notice of entry of Confirmation Order pursuant to Bankruptcy Rule 3020(b).   If an objection is filed within the time period set forth in this section, the Claim shall become an Allowed Administrative claim only to the extent Allowed by a Final Order.   An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed pursuant to Section 5.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by a Final Order.

(d)      **Payment of Administrative Claims.**   Each holder of an Allowed Administrative Claim, other than a Fee Claim, shall be paid the full amount of such holder's Allowed Administrative Claim on the later of (i) the Effective Date or (ii) ten (10) days after such claim becomes Allowed by Final Order unless other treatment has been agreed upon by such holder and the Debtor evidenced by written agreement, or as ordered by the Bankruptcy Court; provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of

17

business by the Debtor may be paid in the ordinary course of business by the Debtor from the Assets.  The compensation Fee Claims of professionals and others whose compensation must be approved by the Bankruptcy Court will be paid only after Bankruptcy Court approval of such compensation.  Subject to Bankruptcy Court approval, each holder of an Allowed Administrative Fee Claim shall be paid the full amount of such holder's Claim within ten days after the allowance of the Fee Claim by the Bankruptcy Court, or upon such other terms as agreed upon by such holder and the Debtor, or as ordered by the Bankruptcy Court.

**(e)**    **Payment of Post Confirmation Professional Fees.**  The Debtor's professionals may seek payment for services rendered as counsel to the Debtor subsequent to the Confirmation Date upon application of the process set forth in Article VI.

## ARTICLE VI

## MEANS FOR EXECUTION OF THE PLAN

**6.1**    **Means For Implementation of Plan.**  Title to all Assets not previously liquidated, sold or abandoned shall remain in the Debtor upon the Effective Date.  The Plan will be funded by the Cash held by the Debtor as of the Effective Date, the liquidation of the Debtor's Assets, the Litigation Loan and the prosecution of the USSF/MLS Claims.

**6.2**    **Post-confirmation Structure.**

(a)    <u>Ownership</u>.  The members of the Debtor shall retain their respective ownership interests in the Debtor post confirmation.

(b)    <u>Board of Directors</u>.  As of the Effective Date, all existing members of the Debtor's Board of Directors shall be terminated from their positions as Directors of the Debtor and shall be replaced by the following persons:  (a) the four (4) members of the Litigation Funding Group, and (b) up to three (3) persons from the Committee, other than agents/employees/representatives of the

USSF, (collectively, the "Post Confirmation Board of Directors"). The Committee shall designate its members of the Post Confirmation Board of Directors in writing at least five (5) days prior to the first scheduled Confirmation Hearing.

Members of the Post Confirmation Board of Directors shall receive no compensation from the Estate or Debtor for serving on the Board. However, such members shall be entitled to reimbursement of reasonable expenses incurred in connection with serving on the Post Confirmation Board of Directors. Such expenses shall be treated as Liquidation Expense Claims and requested, approved and paid as set forth below.

The Post Confirmation Board of Directors shall act by majority vote. Members of the Post Confirmation Board of Directors shall each be deemed to have one vote <u>except</u> (i) in connection with issues (including the retention of professionals) to litigate or settle the Causes of Action, the Members of the Post Confirmation Board of Directors appointed by the Committee shall each be deemed to have three votes, and (ii) in connection with issues in connection with the USSF/MLS Claims, the Members of the Post Confirmation Board of Directors appointed by the Committee shall **not** be entitled to vote.

Except as specifically modified in the Plan, the Debtor Operating Agreement shall govern the term, resignation, replacement, rights and responsibilities of the Post Confirmation Board of Directors. The initial term of the members of the Post Confirmation Board of Directors shall be three (3) years from the Effective Date.

(c)      <u>Operating Agreement</u>. Except as specifically modified by the Plan, the Debtor's Operating Agreement shall govern post confirmation. As of the Effective Date, the following sections of the Operating Agreement shall be deemed deleted/terminated: 2.3; 4.2; 4.5(a)-(c), (i)-(j);

5.8; 8.3;  8.7;  8.12; 9.1; 9.2; 11.2;  11.6;  as well as Sections 5 and 7 of the amendment to the Operating Agreement.

(d)     <u>Officers and Employees</u>.  As of the Effective Date, all then existing officers and employees of the Debtor shall be deemed terminated.

**6.3     Post-confirmation Management.**

(a)     <u>Corporate Action</u>.  The Plan will be administered by the Plan Administrator and all actions taken thereunder in the name of the Debtor shall be taken through the Plan Administrator.  The Plan Administrator shall be synonymous with the manager as defined in the Operating Agreement of the Debtor.

(b)     <u>Plan Administrator</u>.   Timothy Kassel will be appointed to serve as the Plan Administrator.  The Plan Administrator shall act for the post-confirmation Debtor in the same capacity as Manager under the Operating Agreement, as amended by the Plan and subject other provisions hereof.

The Plan Administrator will not devote himself full time to the position of Plan Administrator.  The Plan Administrator is expressly authorized to maintain other employment and/or pursue other business opportunities contemporaneous with serving as Plan Administrator, including such employment or business opportunities in the former industry of the Debtor and/or with members, creditors or parties in interest of the Debtor.

All distributions to be made under the Plan shall be made by the Plan Administrator, except to the extent that such distributions may be made by Debtor's counsel.  The duties and powers of the Plan Administrator shall include the following:

> To exercise all power and authority that may be necessary to
> implement the Plan and take all actions that may be taken by any
> officer of the Debtor including the authority to prosecute or
> compromise the Causes of Action (pursuant to post confirmation

20

board approval) and to liquidate the remaining Assets of the Debtor.

To maintain all accounts, make distributions and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtor or post-confirmation Debtor;

To take all steps reasonably necessary and practicable to terminate the corporate existence of the Debtor after liquidation of the Debtor's Assets or final disposition thereof;

To make decisions regarding the retention or engagement of professionals or other persons by the post- confirmation Debtor and to pay, without court order (except as otherwise provided in the Plan), all reasonable fees and expenses of the Estate accruing after the Effective Date from property of the Estate).  For instance, the Plan Administrator shall continue the retention of Pryor Cashman in connection with the USSF/MLS Claims and may continue the retention of Forman Holt & Eliades LLC in connection with the Causes of Action.

To file and prosecute objections to Claims and compromise or otherwise resolve any Claims (disputed or otherwise), and

To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable in connection with the administration and consummation of the Plan.

(c)      <u>Investments</u>.   All Cash held by the Plan Administrator in any accounts or otherwise shall be invested in accordance with Section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court.

(d)      <u>Winding Up Affairs</u>.  Following the Effective Date, the Debtor shall not engage in any business activities or take any actions, except those necessary to consummate the Plan, pursue claims/litigation and wind up the affairs of the Debtor.  On and after the Effective Date, the Plan Administrator may, in the name of the Estate, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation

Order.  The Estate shall remain in existence pending the fulfillment of the terms of the Plan; thereafter, the Plan Administrator shall take appropriate action to dissolve the Debtor.

(e) <u>No Agency Relationship, Limitation of Liability of Plan Administrator, Indemnification and Insurance</u>.  The Plan Administrator and his agents shall not be deemed to be the agent for any of the creditors in connection with the funds held or distributed pursuant to this Plan.  The Plan Administrator and his agents shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct.  The Plan Administrator and his agents shall be indemnified and held harmless, including the costs of defending such claims, by the Estate against any and all claims arising out of the performance of his or their duties under this Plan, except to the extent the Plan Administrator's actions constitute gross negligence or willful misconduct.  The Plan Administrator may obtain, at the expense of the Estate, commercially reasonable liability or other appropriate insurance with respect to the Estate's indemnification of the Plan Administrator and his agents.  The Plan Administrator and his agents may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party or parties.  The Plan Administrator and his agents may rely upon information previously generated by the Debtor.

(f) <u>Compensation of Plan Administrator And His Respective Professionals</u>.  The Plan Administrator's compensation shall be on an hourly basis at the rate of $75.00 per hour plus reimbursement of reasonable out of pocket expenses.  Subject to the procedures set forth below, the Plan Administrator shall pay from funds of the Estate, without application to or approval of the Bankruptcy Court, the reasonable charges that he incurs after the Confirmation Date for

professional fees and such other expenses that, but for the occurrence of the Confirmation Date, would constitute Allowed Administrative Expense Claims ("Liquidation Expense Claims"). By the last business day of each month following the month for which compensation is sought, the Plan Administrator and his professionals shall submit their respective monthly statements to the Post Confirmation Board of Directors. Such statements shall describe in detail the services performed, the fees for such services and the disbursements made in connection with the rendition of such services. Each recipient will have ten (10) calendar days from the date of receipt of such statements to review any such statements and to object to such statements. At the expiration of such ten (10) calendar day period, the Plan Administrator shall promptly pay such statement from funds of the Estate, except such fees or disbursements as to which an objection has been timely made. In the event of objection, the parties shall, within seven (7) calendar days of the receipt of the statement, confer with one another and attempt to reach an agreement regarding the correct payment to be made. If an agreement cannot be reached within ten (10) calendar days of the receipt of the statement, the objecting party shall submit to the Bankruptcy Court within five (5) business days thereafter a written objection setting forth the precise nature of the objection and the amount at issue, with such objection to be served on the Plan Administrator and his counsel, the Office of the United States Trustee, and the Entity who has submitted the statement to which the objection is directed. Thereafter, the Bankruptcy Court will consider and dispose of the objection. The Plan Administrator shall pay all compensation and expenses, or any portion thereof that is not the subject of an objection.

(g)     <u>Direction to Parties</u>. From and after the Effective Date, the Plan Administrator may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of

property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, pursuant to Section 1142(b) of the Bankruptcy Code.

(h)    <u>Disbursing Agent</u>.    Except as otherwise provided in the Plan, the Plan Administrator shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The disbursing agent shall be compensated as set forth in the Plan from funds of the Estate.

(i)    <u>Dissolution of Committee</u>.  As of the Effective Date, the Committee shall be deemed dissolved and the engagement of the professionals retained by the Committee shall be deemed concluded (subject to Section 11.3).

## ARTICLE VII

### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR DEBTOR INTERESTS

**7.1    Classes Entitled to Vote.**  Each Class of Claims which is impaired under the Plan shall be entitled to vote with respect to the Plan.

**7.2    Class Acceptance Requirement.**  With respect to any Class of Claims which is impaired and entitled to vote, such Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class (excluding Insiders) that vote on the Plan. With respect to any Class of Debtor Interests which is impaired and entitled to vote, such Class of Debtor Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of such class that vote on the Plan.

Any Class of Claims whose members fail to vote shall be deemed to have accepted the Plan for all purposes.

**7.3**    **Confirmation Without Acceptance.**  If any impaired Class of Claims or Debtor

Interests fail to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Plan

Proponent may request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy

Code section 1129(b), provided that at least one impaired class as voted to accept the Plan.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1**    **Date of Distributions.**  Any and all distributions and deliveries to be made under

the Plan shall be made on the Distribution Date, or the Next succeeding Business Day if such date is

not a Business Day, except as otherwise provided for in the Plan.

**8.2**    **Disbursing Agent.**  The Plan Administrator shall serve as Disbursing Agent and

shall make all distributions required under the Plan.

**8.3**    **Means of Cash Payment**.  Cash payments made pursuant to the Plan shall be in

U.S. funds, by check drawn on a domestic Financial Institution.

**8.4**    **Delivery of Distributions**.  Subject to Bankruptcy Rule 9010, distributions and

deliveries to holders of Allowed Claims or Debtor Interests shall be made at the address of each

such holder as set forth on the Proof of Claim filed by such holder (or at the last known addresses of

such holders if no Proof of Claim is filed).  If any holder's distribution is returned as undeliverable,

no further distributions to such holder shall be made unless and until the Debtor is notified of such

holder's then current address, at which time all missed distributions, to the extent provided under

this Article, shall be made to such holder without interest.

**8.5**    **Time Bar to Cash Payments.**  Checks issued by the Debtor in respect of Allowed

Claims shall be null and void if not cashed within ninety (90) days after the date of issuance.

Requests for reissuance of any check shall be made directly to the Debtor by the holder of the

Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such voided check shall be made on or before 120 days after the date of issuance of such check. After such date, all claims as to voided checks shall be discharged and forever barred and the funds shall be redistributed pursuant to the terms of and in accordance with the Plan.

**ARTICLE IX**

**TREATMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES**

**9.1** **Executory Contracts and Unexpired Leases.**  With the exception of the Debtor's executory contracts and unexpired leases which have been rejected or assumed pursuant to the Bankruptcy Code or an order of the Bankruptcy Court prior to the Effective Date, any and all executory contracts and unexpired leases to which the Debtor is a party, shall be deemed to be rejected on the Effective Date in accordance with the provisions and requirements of Bankruptcy Code sections 365 and 1123 unless specifically set forth herein.  Nothing contained herein shall obligate the Plan Proponent to file any list of assumed executory contracts or unexpired leases.

**9.2** **Cure of Defaults.**  The Confirmation Order shall establish the payment, if any, required to cure any defaults as required by Bankruptcy Code section 365(b) which shall be paid as provided in Section 5.1(d).  The Debtor will promptly make such cure payments as provided for in the Confirmation Order.  The Debtor does not anticipate that there are any monetary defaults under any leases or executory contracts which are required to be cured.

**9.3** **Claims Based on Rejection of Executory Contracts or Unexpired Leases.** All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing Claims in any order of the Bankruptcy Court approving such rejection, (ii) thirty (30) days after the date of rejection, or (iii) thirty (30) days after the entry of the Confirmation Order.  Any

26

such Claim, which is not the subject of a timely filed Proof of Claim will be barred forever from assertion against the Debtor, its Assets, or the Bankruptcy Estate.  Notice of the deadline as set forth in the preceding sentence shall be by direct notice to known parties to such rejected contracts and by the notice of entry of the Confirmation Order with respect to unknown contracts or parties.  Unless otherwise ordered by the Bankruptcy Court, upon allowance thereof, all properly filed Claims arising from the rejection of executory contracts or unexpired leases, shall be, and shall be treated as Class 3 General Unsecured Claims.

**ARTICLE X**

**OBJECTIONS TO CLAIMS**

**10.1**     **Objection Deadline**.  As soon as practicable, but in no event later than sixty (60) calendar days after the Effective Date (or such later date as may be established by Order of the Bankruptcy Court), objections to Claims (other than Administrative Claims and Deficiency Claims) shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.   Objections to Administrative Claims must be filed pursuant to the provisions of section 5.1(c) of the Plan.

**10.2**     **Treatment of Disputed Claims**.  No distribution will be made to any holder of a Contested Claim unless and until such Claim becomes an Allowed Claim pursuant to Final Order of the Bankruptcy Court.   On the Distribution Date, with respect to any claim to which the Debtor has filed an objection which has not been resolved by way of Final Order, the full amount of the pro rata dividend of the Contested Claim shall be retained by the Debtor.  At such time as the Contested Claims are resolved by Final Order, the dividend will be released to such creditors, without interest, if the Contested Claim amounts are allowed in their entirety.  To the extent that the Contested Claim amounts are reduced or expunged, then the remainder of the dividend

27

initially retained by the Debtor on account of such claim shall be distributed on a pro rata basis pursuant to the terms of the Plan.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.1** **Effect of Confirmation Order.**   The provisions of the Plan shall be binding upon the Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**11.2** **Abandonment, Vesting and Re-vesting of Assets.**   As of the Effective Date, the Debtor shall retain ownership of all Assets not previously sold or abandoned, which Assets shall revest in the Debtor free and clear of all liens, Claims, and encumbrances of any Creditor or other Persons, except the obligations, rights and liens continued or granted pursuant to the Plan and the Confirmation Order.

**11.3** **Disbanding of Creditors' Committee.**   Upon the Effective Date, the Committee shall be terminated.   However, the Committee's professionals shall be entitled to  review final fee applications and file a final application for compensation and reimbursement of expenses pursuant to Article 5.1(b) of the Plan.

**11.4** **Binding Effect.**   The rights, benefits and obligations conferred on any Person by the Plan will be binding upon, and inure to the benefit of the executors, agents, successors, heirs, affiliates, authorized representatives, counsel and assigns of any such Persons including any Person claiming an interest in any Asset through such Person, except as otherwise expressly provided in the Plan.

**11.5  Severability.**    If the Bankruptcy Court determines that any provision of this Plan is unenforceable either on its face or as applied to any Claim transaction, the Plan Proponent may modify the Plan in accordance with Section 12.3 so that such provision shall not be applicable to the holder of any Claim or Debtor Interest.  Such a determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provision of the Plan or (ii) require the re-solicitation of any acceptance or rejection of the Plan.  However, severability of any condition set forth in Article 11 may not occur unless as provided in Article 11.

### ARTICLE XII

### CONSUMMATION OF THE PLAN

**12.1    Retention of Jurisdiction.**    The Bankruptcy Court shall retain subject matter jurisdiction over the Chapter 11 Case for purposes (i) through (ix) below:

(i)    To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims;

(ii)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(iii)    To determine any and all applications pending on the Effective Date for the rejection, the assumption or the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor are a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(iv)    To determine any and all applications, adversary proceedings, and contested or litigated matters, including those  pending on the Effective Date.  However, the

29

Bankruptcy Court shall not have, nor retain, jurisdiction over the USSF/MLS Claims;

(v)     To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Court;

(vi)    To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Person's obligations hereunder;

(vii)   To enforce the provisions of Article XI;

(viii)  To issue orders in aid of execution of the Plan to the extent authorized by Bankruptcy Code section 1142; and

(ix)    To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with and including the Plan and the implementation thereof, the Confirmation Order, the Effective Date or any Distribution Date.

**12.2    Failure of Court to Exercise Jurisdiction.**    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 Case, Section 12.1 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other Court having competent jurisdiction with respect to such matter.

**12.3    Modification of Plan.** Modifications of the Plan may be made in writing by the Plan Proponents at any time before confirmation, provided that pursuant to Bankruptcy Code section 1127, (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, and (b) the Plan Proponents shall have complied with Bankruptcy Code section 1125.

The Plan may be modified at any time after confirmation and before or after its substantial consummation by the Plan Proponents provided that pursuant to Bankruptcy Code section 1127, (a) the Plan, as modified, meets the requirements of the Bankruptcy Code, and (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Bankruptcy Code section 1129.  A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified unless, within any time period fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**12.4**    **Inconsistencies Between Plan and Disclosure Statement.**    In the event there are inconsistencies between the Plan and Disclosure Statement, the terms of the Plan shall control.

CHAMPIONSWORLD, LLC

By:    /s/ Timothy Kassel
Timothy Kassel
Sr. Vice President – Administration

Dated:  January 25, 2006

m:\pef\champions world\plan\plan-3ndred.doc

31